WILLIAM G. CONLEY *et al. v.* RICHARD E. TALBOTT, *State Treasurer*

(No. 8764)

Submitted March 2, 1938. Decided March 4, 1938.

(Written opinion filed March 15, 1938.)

*Clarence W. Meadows*, Attorney General, and *Ira J. Partlow*, Assistant Attorney General, for relators.

*R. K. Talbott* and *John E. Amos*, for respondent.

MAXWELL, PRESIDENT:

In this original jurisdiction proceeding, mandamus is sought to require of Richard E. Talbott, State Treasurer, certain official action hereinafter explained. The relators are William G. Conley, former ·Governor of the State of West Virginia; Homer A. Holt, Governor and ex-officio a member and president of the Board of the School Fund; William W. Trent, State Superintendent of Free Schools, and Edgar B. Sims, Auditor of the state, ex-officio members of the board.

This proceeding is an aftermath of the case of *State* v. *William G. Conley, et al.*, 118 W. Va. 508, 190 S. E. 908, decided by this court April 3, 1937. In that case it was held (the present writer dissenting) that the individual members of the Board of the School Fund in the Conley administration (March 4, 1929 to March 4, 1933) are personally liable for losses sustained by the board on account of a loan made by the board to the Consolidated Fruit Company, a private corporation, November 21, 1929. The individuals held to be responsible for the loss are William G. Conley, former Governor, William C. Cook, former State Superintendent of Free Schools, William S. Johnson, former Treasurer of the state, and Edgar C. Lawson, former Auditor. The balance due the state on account of that transaction is somewhat in excess of $78,000.00.

In 1931, the Board of the School Fund under the Conley administration purchased $60,000.00 of bonds of the Ferguson Hotel Corporation, a private organization. Default having been made in the payment of the bonds, there is now due the state by reason of that investment the sum of approximately $70,000.00. It is considered by the relators that on the same principles whereunder liability was adjudicated against Messrs. Conley, Cook, Johnson and Lawson in respect of the loss under the Consolidated Fruit Company transaction, there would be

like adjudication regarding the funds of the board invested in Ferguson Hotel Corporation bonds.

The aggregate of the two debts, with interest, is around $151,000.00. Efforts are about to be consummated for the discharge of this total by the payment of the full amount thereof to the Board of the School Fund.

This proceeding in mandamus comes about because the state treasurer insists that interest on the items of the indebtedness shall be calculated at six per centum to date of settlement, and that interest on certain Conley notes, hereinafter mentioned, shall be at the rate of six per centum per annum. The proposed settlement, acceptable to the relators, comprehends interest at the rate of three per centum only.

The statute requires no bond of a governor. Governor Conley gave none. Messrs. Cook, Johnson and Lawson each gave an official bond in pursuance of the requirements of the statute. The responsibility of settling this large indebtedness falls on the ex-Governor personally and the sureties on the bonds of the other three former officials. Of the total indebtedness of $151,025.45, the sureties offer to pay in cash $99,136.79, and ex-Governor Conley proposes to pay $5,000.00 cash and to execute his notes in the sum of $46,888.66, secured by a lien on real estate owned by him. In reaching the stated aggregate of the two items of indebtedness, interest has been computed on the principal amount of the Consolidated Fruit Company debt from the date of the debtor's default, September 1, 1937; and interest calculated on the Ferguson Hotel Corporation debt at the rate of three per centum per annum since default, April 1, 1931. The notes which Conley proposes to execute are to bear interest from date at like rate. Explanation for the board's willingness to accept the lesser interest rate lies in the fact that if the money had been invested in government securities, a greater rate than three per centum would not be available. So, the board, in fact, loses nothing by reason of the acceptance of the proposed settlement.

Does the Board of the School Fund have legal right

to make settlement out of court of a debt on a basis of interest less than the legal rate of six per centum per annum?

We answer the inquiry in the affirmative.

Under a constitutional provision, certain funds are placed in the custody of the Board of the School Fund, which board is composed of the Governor, Superintendent of Free Schools, Auditor and Treasurer. It is provided in that section that the board shall invest in prescribed manner all sums coming under its control, and shall "manage the same under such regulations as may be prescribed by law * * *." Constitution of West Virginia, Article XII, Section 4. A statute, Code, 18-9-5, effectuating the constitutional requirement, provides that the board "shall have the management, control and investment of said fund, as provided by the fourth section of the twelfth article of the Constitution."

The board's constitutional and statutory authorization to manage funds within its control carries by necessary implication the right of the board to make settlements out of court on the advice and approval of the state's legal adviser, namely, the attorney general. This deduction coincides with the provisions of a general statute, Code, 14-1-18, which reads: "The auditor or other officer or official body, having authority to collect the same, may, with the advice of the attorney general, adjust and settle, upon just and equitable principles, without regard to strict legal rules, any account or claim, in favor of the State, which may at the time have been standing upon the books of his office more than five years; and, with the like advice, may dismiss any proceedings instituted by him."

It is a general rule "that in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers, as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers." Throop on Public Officers, sec. 542. Consult: Mechem's Public Offices and Officers, sec. 511; 46 Corpus Juris, p. 1032.

We gave recognition to the implied power of a public official in the case of *Mathews, State Compensation Commissioner,* v. *Dale,* 118 W. Va. 303, 190 S. E. 338. The action was by the commissioner to recover money which had been improperly paid the defendant. Though the statute does not expressly authorize such an action by the Workmen's Compensation Commissioner, we held that under his implied authority, he had the right to maintain the action; that the power was inherently vested in him for the protection of the funds whereof he is the custodian.

Distinction must be made between the basic matter involved in the case of *State* v. *Conley, supra,* and the underlying proposition which is here presented. In the former case, there was brought in question the right of investment of funds in hand. Here, the inquiry pertains not to the investment of cash in the treasury, but to the collection of a debt. The law closely circumscribes the board's right of investment, but the statute pertaining specifically to the board makes no provision respecting collections or settlements. In the latter circumstance, the board acts on its inherent and implied authority.

For the reasons stated, we award a peremptory writ of mandamus against Richard E. Talbott, State Treasurer, requiring him to accept the cash tendered and the Conley notes with interest at the rate of three per centum, to execute and deliver a proper release on account of the Consolidated Fruit Company liability, and to assign the Ferguson Hotel Corporation bonds; all in accordance with the terms of settlement agreed to by the majority of the Board of the School Fund.

*Writ awarded.*